## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN FARBEY LEAL-JAIMES,<br>    Petitioner,<br><br>    v.<br><br>DAVID T. WEISLING, *field Office*<br>*Director of Enforcement and Removal*<br>*Operations, Boston Field Office,*<br>*Immigration and Customs*<br>*Enforcement;*<br><br>MARKWAYNE MULLIN, *Secretary,*<br>*U.S. Department of Homeland*<br>*Security;*<br><br>U.S. DEAPRTMENT OF HOMELAND<br>SECURITY;<br><br>TODD BLANCHE, *Acting U.S.*<br>*Attorney General;*<br><br>EXECUTIVE OFFICE FOR<br>IMMIGRATION REVIEW;<br><br>MICHAEL NESSINGER, *Warden of*<br>*Wyatt Detention Facility,*<br>    Respondents. | No. 26-cv-506-JJM-PAS |

## ORDER

Jonathan Farbey Leal-Jaimes has filed this Habeas Petition under 28 U.S.C.

§ 2241, arguing that his arrest and continued detention by Immigration and Customs

Enforcement ("ICE") is unlawful, and that he must be released and given a bond

hearing before an immigration judge ("IJ") under 8 U.S.C. § 1226(a).

The Government claims that in 2022, Mr. Leal-Jaimes entered the United States from Colombia without inspection, and the Department of Homeland Security ("DHS") shortly thereafter processed him for expedited removal. The Government further alleges at the time of his entry, Mr. Leal-Jaimes' status was that of an applicant for admission who was lawfully detained under Section 1225(b)(1). That was four years ago.

The DHS determined that Mr. Leal-Jaimes was inadmissible under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") (a/k/a 8 U.S.C. § 1182(a)(7)(A)(i)(I)). Mr. Leal-James was processed for expedited removal. About a month later, following an interview of Mr. Leal-Jaimes, an asylum officer determined that Mr. Leal-Jaimes established a credible fear of returning to Colombia. Mr. Leal-Jaimes' circumstances changed. The Government provided him with a bond hearing, and an IJ ordered him released on bond. The Government claims that Mr. Leal-James was paroled for humanitarian reasons under section 212(d)(5) of the INA and instructed to check in with ERO-Boston on December 13, 2022.[1]

---

[1] Mr. Leal-James states that he does not remember being told that he was paroled, and has no document showing a grant of parole. The Government confirms that it cannot document the parole it asserts. In response to the Court's Order to produce the original 2022 parole notice, the Government reports that both ICE and USCIS "represented … that the documentation is likely in a paper file and neither has of yet located the requested documents," and that they will supplement the record only "once located." ECF 5. The only evidence in this record that a § 212(d)(5) parole ever issued is the Government's own after-the-fact revocation letter, drafted the day of Petitioner's arrest. It is the Government's burden to establish the lawful basis for the custody they have imposed. In any event, Mr. Leal-Jaimes cannot be held in mandatory, no-bond detention on the strength of a parole grant the Government asserts but cannot locate.

2

Four years later, with no known criminal charges or conviction, , Mr. Leal-James was arrested while he was checking in with ICE, based on an I-200 warrant and served with a parole revocation letter and a Notice to Appear before an IJ for removal proceedings scheduled for August 11, 2026, at 1:30 p.m.[2]

The Government's position is that Mr. Leal-Jaimes is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2). ECF No. 5 at 1. As support for this position, the Government cites to recent decisions from the Eighth and Fifth Circuits. *Id.*; *see Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). These cases stand for the idea that all noncitizens present in the United States who have not been admitted or paroled are "applicant[s] for admission" that are "seeking admission" into the country, and they are thus subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(2); *Avila*, 170 F.4th at 1134-35; *Buenrostro-Mendez*, 166 F.4th at 502.

The Government ignores the fact that this Court is not bound by decisions from the Eighth and Fifth Circuits. Indeed, this Court—and the overwhelming majority of district courts—have rejected the Government's position. *See, e.g.*, *Morales v. Hyde*, No. 26-cv-093-JJM-PAS, 2026 WL 508811, at *1 (D.R.I. Feb. 24, 2026) (collecting cases from the District of Rhode Island); *Ndayikeza v. Nessinger*, No. 26-cv-435-JJM-PAS, 2026 WL 1983330, at *1 (D.R.I. July 9, 2026) (collecting even more

---

[2] Nothing in the record suggests that Mr. Leal-Jaimes absconded or violated the terms of his parole and that there is no justification in the record for its termination. Mr. Leal-Jaimes was placed on GPS monitoring, reported to ICE as directed, and, after the monitoring device was removed, attended periodic check-including on July 22, 2026 when ICE arrested him.

cases from the District of Rhode Island); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

Six federal courts of appeals have also rejected the Government's position. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026) (holding that 8 U.S.C. § 1225(b)(2)(A) "does not apply to . . . noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter"); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026) ("We are unpersuaded by the Government's re-interpretation of § 1225(b)(2)(A)."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) ("We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them."); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026) (concluding that "§ 1225(b)(2)(A) is limited to the border, and that [petitioner] is an 'applicant for admission' but not 'seeking admission'"); *Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ----, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) (finding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); *Cirrus Rojas v.*

4

*Olson*, No. 25-3127, --- F.4th ----, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026) (finding that noncitizens "present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings"). This Court finds those decisions to be persuasive.

Just in case it bears repeating, the Court will remind the Government that its power to detain a noncitizen must be grounded in a specific provision of the INA. *See Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026); *accord Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). The Government argues that 8 U.S.C. § 1225(b)(2) is the authority that gives it the power to detain Mr. Leal-Jaimes . ECF No. 5 at 1. Not so.

As this Court has stated in *Tomas Elias* and the many cases that have followed it, this INA provision does *not* provide the Government with the legal authority to detain individuals in Mr. Leal-Jaimes' position. *See, e.g., Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *2-3 (D.R.I. Oct. 27, 2025). As someone who has resided in the United States since 2024, *see* ECF No. 1 at 2, Mr. Leal-Jaimes cannot fairly be described as someone who is "seeking admission" into the country. As such, 8 U.S.C. § 1225(b)(2) does not and cannot apply to him.

The Government submits that "the legal issues presented in [Mr. Leal-Jaimes'] Petition are similar to those recently addressed by this Court in *Tomas Elias*," and, as such, "the Court may resolve the petition without further briefing or oral argument." ECF No. 5 at 2.

The reasoning provided in *Tomas Elias* remains correct.  Thus, the Court finds that Mr. Leal-Jaimes' detention is unlawful.  *See Tomas Elias*, 2025 WL 3004437, at *2-3.  Mr. Leal-Jaimes' petition is therefore GRANTED.  ECF No. 1.

As for next steps, there is a dispute over what remedy is proper for Mr. Leal-Jaimes.  The Government argues that the Court should deny Mr. Leal-Jaimes' request for immediate release from ICE custody and asks that he only be granted a bond hearing.  ECF No. 5 at 1 n.1.

Of course, this is antithetical to the Government's original position.  The Government has maintained that those who are subject to 8 U.S.C. § 1225(b)(2) are statutorily *ineligible* for bond hearings.  *See, e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018)).  And, in this case, the Government does not claim that it has the authority to detain Mr. Leal-Jaimes under any statute other than 8 U.S.C. § 1225(b)(2).  But again, this statute does not apply to Mr. Leal-Jaimes' particular circumstances.

Recall that the Government's power to detain *must* be grounded in a specific provision of the INA.  Thus, considering that the Government did not have the legal authority to detain Mr. Leal-Jaimes  in the first place, and given that it fails to cite any other authority under which he may be detained, it follows then that the proper remedy is to order Mr. Leal-Jaimes' immediate release.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

The Court will also order a bond hearing for Mr. Leal-Jaimes under 8 U.S.C. § 1226(a). At the bond hearing, the Government may argue to an IJ that Mr. Leal-Jaimes should be detained. Yet the Government will have the burden of proving this point either by clear and convincing evidence that he poses a danger to the community or by a preponderance of the evidence that he poses a flight risk. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

## CONCLUSION

The Court therefore GRANTS Mr. Leal-Jaimes' Habeas Petition. ECF No. 1. The Government is hereby ORDERED to **release JONATHAN FARBEY LEAL-JAIMES immediately**. Per its request, the Government is permitted to transfer Mr. Leal-Jaimes to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property. ECF No. 5 at 1 n.1. However, the Court DENIES the Government's additional request to place "any monitoring equipment deemed appropriate." *Id.* Because the Government did not have the lawful authority to detain Mr. Leal-Jaimes in the first place, the Court will not permit the Government to keep him "in custody" using monitoring equipment pending the bond hearing. *See Morales*, 2026 WL 508811, at *3-4 (denying similar request from the Government because "[i]t does not follow . . . that ICE gets to keep [the petitioner] 'in custody' once he leaves the Wyatt Detention Facility"). Effectuating Mr. Leal-James' transfer to Burlington shall not in any way impede his **immediate release**.

7

The Government is also ORDERED to **provide JONATHAN FARBEY LEAL-JAIMES with a bond hearing before an IJ** under 8 U.S.C. § 1226(a) within ten days of the date of this Order.  Should it choose to pursue Mr. Leal-Jaimes' continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals.  *See Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests).  The IJ shall consider any alternatives to detention *before* making a finding as to flight risk or dangerousness.  *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

Finally, the Court ORDERS the Government to **file a status report** within five days of Mr. Leal-Jaimes' bond hearing, stating whether he has been granted bond.  If Mr. Leal-Jaimes' request for bond is denied, the Government shall state the reason for that denial and whether Mr. Leal-Jaimes  has been re-detained by ICE.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 8, 2026

8